# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

_____

№ 07-CV-323 (JFB)
_____

IN RE: POSEIDON POOL & SPA RECREATIONAL, INC.,

Debtor.

VERMONT PARTNERS, LTD.,

Appellant,

VERSUS

ANDREW M. THALER, ESQ., AS TRUSTEE OF THE ESTATE OF POSEIDON POOL & SPA RECREATIONAL, INC.

Appellee.
_____

MEMORANDUM AND ORDER
September 28, 2007
_____

JOSEPH F. BIANCO, District Judge:

The instant case is an appeal from the involuntary bankruptcy proceeding of Debtor Poseidon Pool & Spa Recreational, Inc. ("Debtor"), under Chapter 7 of the Bankruptcy Code, in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"). Vermont Partners, Ltd. ("Vermont Partners" or "Appellant"), the mortgagee of Debtor's landlord, Steamroller Properties, LLC ("Steamroller"), appeals from an Order of the Honorable Dorothy Eisenberg, United States Bankruptcy Judge, dated November 30, 2006, finding that Trustee Andrew M. Thaler, Esq. ("Trustee" or "Appellee") of Debtor's estate timely applied to the Bankruptcy Court to assume Debtor's lease. Trustee opposes the instant appeal, asserting that: (1) it is interlocutory; and (2) Trustee's application was timely. For the reasons set forth below, the Court disagrees on the first ground but agrees on the second, and affirms the Bankruptcy Court's Order.

I. BACKGROUND

A. The Filing and Conversion

Debtor filed for bankruptcy under Chapter 11 of the Bankruptcy Code on October 7, 2005 (the "Filing Date"). On September 21, 2006, the Bankruptcy Court converted the case to Chapter 7, effective September 15, 2006 (the "Conversion Date").

## B. The Ruland Road Property

As of the Filing Date, Debtor leased and occupied non-residential real property located at 25 Ruland Road in Melville, NY (the "Ruland Road Property"). Steamroller was Debtor's landlord and owned the Ruland Road Property. Vermont Partners was Steamroller's mortgagee. At the time of the Filing Date, Debtor had failed to pay rent to Steamroller, which in turn defaulted on its mortgage with Vermont Partners. On August 3, 2006, in lieu of foreclosure, Vermont Partners accepted the deed for the Ruland Road Property (the "August 3 Transfer").

The lease between Debtor and Steamroller for the Ruland Road Property (the "lease") provided Debtor with a right of first refusal in the event Steamroller received an offer to purchase or elected to sell the Ruland Road Property (the "right of first refusal").

## C. The Adversary Proceeding

On October 26, 2006, Trustee filed a complaint against Vermont Partners, Steamroller, Steamroller Properties, Ltd. (Steamroller's predecessor in interest), and Joseph Gartner, the President both of Debtor and of Steamroller. In the complaint, Trustee alleged that the August 3 Transfer constituted a (1) breach of contract; (2) breach of New York Business Corporation Law; (3) tortious interference with contract; and (4) fraudulent conveyance because Steamroller did not notify Debtor of its contractual right of first refusal prior to transferring the Ruland Road Property to Vermont Partners. (Compl. ¶¶ 61-104.) Trustee asks the Bankruptcy Court to reverse the August 3 Transfer and to award Trustee damages and attorney's fees. (*Id.* ¶ 104.)

## D. The Bankruptcy Court's Extensions of Time to Assume or Reject the Lease[1]

On November 7, 2005, Trustee filed a motion with the Bankruptcy Court to extend the time within which Debtor had to assume or reject the lease to April 28, 2006, under 11 U.S.C. § 365(d)(4) (the "Motion for Extension").[2] (Bankruptcy Court Docket Entry (hereinafter, "Docket Entry") 18.) The Bankruptcy Court scheduled a hearing on the Motion for Extension for November 29, 2005 (the "Extension Hearing"). (*Id.*) In a so-called "Minute-Entry" on the docket entered on November 29, 2005, the Bankruptcy Court adjourned the Extension Hearing to January 19, 2006 and granted an extension of time to assume or reject until January 27, 2006, stating: "DEBTORS [sic] TIME TO ASSUME OR REJECT LEASE EXTENDED TO 1/27/06 DEBTOR TO SET ASIDE THE RENT PAYMENT PURSUANT TO LEASE." (Unnumbered Docket Entry, dated November 29, 2005 (hereinafter, "Minute-Entry 1").)

On December 5, 2005, the Bankruptcy Court issued a written order confirming the extension and rent set-aside granted by means

---

[1]Although Appellant disputes the meaning of certain docket entries, the Court's recitation of facts below is based on its own review of the record and its conclusions are consistent with those of the Bankruptcy Court, for the reasons discussed *infra*.

[2]Appellee states in error that it filed this motion on November 1, 2005. (Appellee's Br. at 24.) Further, the Court notes that the Motion for Extension erroneously requested an extension until a date prior to the date of the motion itself (April 28, 2005). Taken in context, it is clear that Debtor intended to request an extension until April 28, 2006.

2

of Minute Entry 1. (Order Pursuant to Sections 105 and 365(d)(4) of the Bankruptcy Code Extending the Time Within Which the Debtor-in-Possession Must Elect to Assume or Reject its Unexpired Lease of Non-Residential Real Property (hereinafter, the "December 5 Order") at 2.) On December 7, 2005, the Bankruptcy Court amended the December 5 Order, adding a separate provision that Debtor must put aside rent due under the lease in a separate escrow account held by Debtor's counsel. (*Amended* Order Pursuant to Sections 105 and 365(d)(4) of the Bankruptcy Code Extending the Time Within Which the Debtor-in-Possession Must Elect to Assume or Reject its Unexpired Lease of Non-Residential Real Property (hereinafter, the "December 7 Order") at 2) (emphasis in original.) The December 7 Order maintained the January 27, 2006 extension. Both the December 5 Order and the December 7 Order contained a provision ordering "that nothing contained in this Order shall, in any respect, be deemed to prejudice the right or ability of the Debtor to assume or reject the lease . . . ." (December 5 Order at 2; December 7 Order at 2.)

On December 23, 2005, Debtor filed a motion for reconsideration of the December 7 Order (hereinafter, the "Motion for Reconsideration"). (Docket Entry 55.) In the Debtor's Affirmation in Support of the Motion for Reconsideration (the "Affirmation"), Debtor alleged that the Bankruptcy Court "granted the extension of time to assume or reject on the condition that the Debtor deliver the rent payment in escrow . . . ." (Affirmation ¶ 5.) The Motion for Reconsideration did not, however, address the provision of the December 7 Order granting the Motion for Extension. Instead, Debtor addressed the provision of the December 7 Order requiring the rent set-aside. (*Id.* ¶ 15.)

On January 10, 2006, the Bankruptcy Court scheduled a hearing on the Motion for Reconsideration for March 9, 2006 (the "Reconsideration Hearing") (Unnumbered Docket Entry, dated January 10, 2006 (hereinafter, "Minute-Entry 2").)

On January 19, 2006, the Bankruptcy Court adjourned the Extension Hearing to March 9, 2006 and granted an additional extension of the time to assume or reject until April 28, 2006, stating: "Hearing Rescheduled Motion to Extend Time within which the Debtor must assume or reject the unexpired lease of the non-residential property located at 25 Ruland Road, Melville, NY *through 4/28/06.*"[3] (Unnumbered Docket Entry, dated January 19, 2006 (hereinafter, "Minute-Entry 3")) (emphasis added.)

On March 9, 2006, the Bankruptcy Court adjourned the Extension Hearing to March 13, 2006. (Unnumbered Docket Entry, dated March 9, 2006 (hereinafter "Minute-Entry 4").) The Bankruptcy Court also adjourned the Reconsideration Hearing to the same day. (Unnumbered Docket Entry, dated March 9, 2006 (hereinafter, Minute-Entry 5").) The Bankruptcy Court docket does not contain an entry for March 13, 2006.

On April 10, 2006, the Bankruptcy Court adjourned the Reconsideration Hearing to May 9, 2006 and granted an additional extension of time to assume or reject until May 11, 2006, stating: "Hearing Rescheduled (RE: related document(s) 55 Motion to Reconsider the Court's Order of December 7, 2005 . . . . *Time Extended to 5/11/06 to Assume or Reject Lease.* . . ." (Unnamed

---

[3]The Bankruptcy Court wrote 4/28/05 in this Minute-Entry, but given that it was already 2006, it is clear that this was a typographical error.

3

Docket Entry, dated April 10, 2006 (hereinafter, "Minute-Entry 6")) (emphasis added.)

On May 2, 2006, Debtor filed a "Supplemental Motion to Assume/Reject" the lease. Appellant alleges that the supplemental motion "makes absolutely no mention of a request that the Bankruptcy Court further extend the Debtor's time to assume or reject the lease."[4] (Appellant's Br. at 7.)

On May 9, 2006, the Bankruptcy Court entered two Minute-Entries. The first states: "Hearing Held (RE: related document(s) 55 Motion to Reconsider the Court's Order of December 7, 2005 . . . . DENIED COURT TO RENDER A WRITTEN DECISION." (Unnumbered Docket Entry, dated May 9, 2006 (hereinafter, "Minute-Entry 7").) The second adjourned the Extension Hearing to June 6, 2006 and granted an extension of the time to assume or reject until June 8, 2006, stating: "Hearing Rescheduled (RE: related document(s) 18 Motion to Extend Time . . . . *TIME EXTENDED TO 6/8/06*, RENT PAYMENTS TO BE HELD IN ATTORNEY FOR DEBTORS [sic] ESCROW ACCOUNT." (Unnumbered Docket Entry, dated May 9, 2006 (hereinafter, "Minute-Entry 8")) (emphasis added.)

On May 19, 2006, the Bankruptcy Court denied the Motion for Reconsideration, (Memorandum Decision Denying Debtor's Motion for Reconsideration of the Court's December 7, 2005 Order (hereinafter, "May 19 Order") at 10), holding that Debtor must continue to pay all postpetition rent into Debtor's attorney's escrow account. (*Id.*) The May 19 Order did not address the provision of the December 7 Order pertaining to the extension of time to assume or reject the lease. However, the Bankruptcy Court noted that "because the Debtor continues to remain in possession of the Premises, the Debtor should pay for its on-going use and occupancy during the time it remains on the Premises postpetition until such time the Debtor either assumes or rejects the lease." (*Id.* at 9.)

On June 6, 2006, the Bankruptcy Court adjourned the Extension Hearing to July 27, 2006. (Unnumbered Docket Entry, dated June 6, 2006 (hereinafter, "Minute-Entry 9").) On July 27, the hearing was adjourned to August 3, 2006. (Unnumbered Docket Entry, dated July 27, 2006 (hereinafter "Minute-Entry 10".).

By Minute-Entry on August 3, the Bankruptcy Court noted that it held a hearing that day regarding the Motion for Extension and marked this motion "settled," stating: "Settled Stipulation and Order to be Settled *Holding Date 9/5/06*." (Unnumbered Docket Entry, dated August 3, 2006 (hereinafter, "Minute-Entry 11")) (emphasis added.)

On August 30, 2006, Debtor filed a motion with the Bankruptcy Court, requesting permission to execute documents necessary to settle with Steamroller, as well as approval of the settlement itself. The executed Stipulation of Settlement, dated August 29, 2006 (the "Stipulation") contained the following provision: "In exchange for Steamroller consenting to extend the time for the Debtor to assume or reject the lease until October 31, 2006, the Debtor shall make monthly rental payments of $36,000.00 per month . . . ." (Stipulation ¶ 2.) The Stipulation also

---

[4]This motion is not part of the record on appeal. However, even assuming Appellant's statement regarding this motion to be true, it does not impact the Court's analysis here.

4

contained the following two provisions: First, it stated: "In the event the Debtor fails to confirm a Plan of Reorganization on or before November 30, 2006, the lease shall be deemed rejected under Section 365 of the Bankruptcy Code." (*Id.* ¶ 4.) Second, it stated: "The terms and conditions of the lease agreement between the Debtor and Steamroller shall remain in full force and effect except for the modification of monetary rent obligations set forth herein." (*Id.* ¶ 5.)

On September 26, 2006, the Bankruptcy Court entered a Minute-Entry stating: "Hearing Held (RE: related document(s) 18 Motion to Extend Time . . . . MARKED OFF CASE CONVERTED TO CHAPTER 7 . . . ." (Unnumbered Docket Entry, dated September 26, 2006 (hereinafter "Minute-Entry 12").)

On November 2, 2006, Trustee filed an Application with the Bankruptcy Court (the "November 2 Application"), which requested that the Bankruptcy Court: (1) authorize the Trustee to surrender keys and possession of the Ruland Road Property to Vermont Partners, without waiving any rights under the lease; (2) deem the November 2 Application to constitute Trustee's election and notice of the right of first refusal; and (3) require Vermont Partners to seek authorization from the Bankruptcy Court prior to leasing, transferring, selling, or encumbering the Ruland Road Property; "or, in the alternative" (4) extend Trustee's time to assume or reject the lease for an "indefinite period." (November 2 Application at 1-2.)

On November 9, 2006, the Bankruptcy Court held a hearing regarding the November 2 Application (the "November 9 Hearing"), a transcript of which is part of the record on appeal (the "November 9 Transcript"). At the November 9 Hearing, counsel for Vermont Partners argued that Debtor had not timely made a motion to extend the time within which it had to reject or assume the lease. (November 9 Transcript at 31-36.) Judge Eisenberg explained the chronology of the extensions that the Bankruptcy Court granted:

> On 4/06 – of '06 there's a notation on the docket that the time to assume or reject was extended to 5/11/06. On 5/9/06 there's a notation on the docket that the time to assume or reject was extended to 6/8/06. On 6/6/06 the docket reflects that the Court is carrying the debtor's original motion to extend time to assume or reject to 7/27. On 7/27 the docket reflects original motion to extend time adjourned to 8/3/06. . . and the docket further reflects that on August 3rd, '06 the motion to extend time to assume or reject is settled, is marked settled, stip to follow, and motion carried to September 5, '06. . . . . On 8/30/06 a motion by the debtor was made to compromise the controversy with Steamroller . . . and this motion, the motion on 8/30/06 included a request to extend the debtor's time to assume or reject a lease to October 31st, '06, which was a reaffirmation by the debtor and an acknowledgment that this matter was being carried all throughout.

(November 9 Transcript at 33-34.)

At the November 9 Hearing, counsel for Vermont Partners also argued that the December 7 Order "conditioned" the extension of time to assume or reject until January 27, 2006 on Debtor's payment of rent. (*Id.* at 31.) In response, Judge Eisenberg stated: "Does that order – does that order say that if it's not paid then the lease will terminate? It did not say that." (*Id.* at 35.)

5

On November 30, 2006, the Bankruptcy Court granted the relief requested in the November 2 Application (the "November 30 Order"). The November 30 Order, which is the subject of the instant appeal, makes the following findings of fact:

> 1. During the superceded Chapter 11 Period of October 7, 2005 to September 15, 2006, the Debtor filed various applications in the form of motions and/or stipulations to extend its time to assume or reject the lease . . . .
> 2. Prior to the conversion of the case to Chapter 7 and on or about August 30, 2006, the Debtor filed a Notice of Presentment to approve the entry of a Stipulation and Order reconciling a controversy regarding the Lease between the Debtor and the Landlord . . . .
> 3. Under cover of that same Application, the Debtor included a request to extend its time to assume or reject the Lease for the Ruland Road Property up to and including October 31, 2006. That motion was still pending as of the date that this case was converted to Chapter 7.
> 4. As of the date that this case was converted to Chapter 7 on September 15, 2006, the time [to] assume or reject the Lease for the Ruland Road Property had not expired. Accordingly, the Lease for the Ruland Road Property had not been rejected prior to the conversion of this case to Chapter 7.
> 5. Predicated upon the foregoing and by operation of 11 U.S.C. § 348(c), the Chapter 7 Trustee had an additional sixty days from the Order of Conversion of this case to Chapter 7 to assume or reject the Lease . . . .
> 6. The last day for the Chapter 7 Trustee to assume or reject the Lease for the Ruland Road Property would have expired on November 14, 2006, within 60 days of the Order converting this case to Chapter 7.
> 7. The Trustee's Application to, *inter alia*, assume the Lease for the Ruland Road property was timely made pursuant to 11 U.S.C. § 365(d)(3) and Bankruptcy Rule 6006.

(November 30 Order ¶ 1-7.) The Bankruptcy Court also authorized Trustee to surrender keys and possession to Vermont Partners, without waiving any rights under the lease, and deemed the November 2 Application to be Trustee's election and notice of the right of first refusal. Finally, the Bankruptcy Court required Vermont Partners to seek authorization for any lease, transfer, sale, or other encumbrance of the Ruland Road Property. (*Id.* ¶ 7.)

E. Procedural History

Vermont Partners filed the instant appeal on February 12, 2007. Appellee filed its response on February 27, 2007. Appellant filed its reply on March 3, 2007.

II. DISCUSSION

A. Jurisdiction and Standard of Review

Appellee claims that the Court does not have jurisdiction over the instant appeal because courts have found that orders extending time to assume or reject leases are interlocutory. (Appellee's Br. at 36.) The Court finds this argument inapposite. The instant appeal pertains to an order permitting assumption of a lease, (November 30 Order ¶ 7), not simply extending the time for such an assumption. Because the Second Circuit has affirmed that "orders granting . . . rejection or assumption of unexpired leases . . . have been

held sufficiently final to be appealable as of right," *Maiorino v. Branford Savings Bank*, 691 F.2d 89, 90-91 (2d Cir. 1982), the Court has jurisdiction over the instant appeal.

The Court will review the Bankruptcy Court's legal conclusions *de novo* and its factual findings for clear error. *See In re Hyman*, No. 05-7026-BK, 2007 WL 2492789, at *3 (2d Cir. Sept. 6, 2007); *see also In re Bayshore Wire Prods. Court*, 209 F.3d 100, 103 (2d Cir. 2000) ("Like the District Court, we review the Bankruptcy Court's findings of fact for clear error [and] its conclusions of law *de novo* . . . ."); *accord In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988-89 (2d Cir. 1990).

B. Timeliness of Trustee's Application to Assume the Lease

Appellant argues that Debtor rejected the lease by operation of 11 U.S.C. § 365 prior to the November 2 Application, and that the Bankruptcy Court erred by holding in the November 30 Order that Trustee had timely applied for assumption. The Court disagrees with Appellant and concludes that the Bankruptcy Court's holding was not erroneous.

11 U.S.C. § 365(d)(3), which pertains to unexpired leases, states:

> The trustee shall timely perform all of the obligations of the debtor . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected . . . . The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60-day period.

11 U.S.C. § 365(d)(3).

Section 365(d)(4) further provides:

> [I]f the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee with 60 days after the fate of the order for relief, or within such time as the court, for cause, within such 60-day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

*Id.* § 365(d)(4).

Finally, § 348©), which pertains to the effect of conversion, provides that § 365(d) applies "in a case that has been converted . . . as if the conversion order were the order for relief." 11 U.S.C. § 348©).

Here, until the Conversion Date, the "date of the order of relief" was the Filing Date: October 7, 2005. According to § 365, Debtor had to assume or reject the lease – or obtain an extension to assume or reject the lease – within 60 days, or by December 5, 2005. As Appellant concedes, Debtor timely filed the Motion for Extension on November 7, 2005. (Appellant's Br. at 14-15.) The Bankruptcy Court then scheduled the Extension Hearing for November 29, 2005. However, when the Bankruptcy Court adjourned the Extension Hearing to January 19, 2006, (*see* Minute-Entry 1), Judge Eisenberg also granted an intermediate extension until January 29, 2006, shortly after the new Extension Hearing date. (*Id.*)

"In effect, the grant of an extension tolls

7

the expiration of the sixty-day period until the end of the extension. . . . Thus, as long as a lease under § 365(d)(4) has not been deemed rejected by the lapse of sixty days *or a period extended by the Court*, the Bankruptcy Court may grant the debtor additional time to decide to assume or reject a lease if the Bankruptcy Court finds cause to do so." *Tigr Rest., Inc. v. Rouse S.I. Shopping Ctr., Inc.*, 79 B.R. 954, 959 (E.D.N.Y. 1987) (emphasis added). In addition, "[b]y setting the matter down for further hearing . . . the court . . . necessarily and impliedly extend[s] the time to assume for such additional period as necessary for resolution of the disputed factual and legal issues." *In re Wedtech Corp.*, 72 B.R. 464, 471 (Bankr. S.D.N.Y. 1987) (citation and quotation marks omitted). Consistent with *Tigr Restaurant* and *Wedtech* – and by means of Minute-Entry 1 – the Bankruptcy Court adjourned the Extension Hearing and granted an extension in order to prevent Debtor's time to assume or reject from lapsing before the Bankruptcy Court could hold the Extension Hearing and rule on the Motion for Extension. Indeed, as Judge Eisenberg explained, the Bankruptcy Court "carried" the Motion for Extension on its docket by means of a series of adjournments and extensions, (November 9 Transcript at 33-34), until Trustee filed an additional motion for extension on August 30, 2006. (*See* Minute-Entry 3 (adjourning Extension Hearing to March 9, 2006; extending deadline to assume or reject to April 28, 2006); Minute-Entry 4 (adjourning to March 13, 2006); Minute-Entry 6 (extending to May 11, 2006); Minute-Entry 8 (adjourning to June 6, 2006; extending to June 8, 2006); Minute-Entry 9 (adjourning to July 27, 2006); Minute-Entry 10 (adjourning to August 3, 2006); Minute-Entry 11 (noting Stipulation of settlement was forthcoming and "holding" Motion for Extension until September 5, 2006).)

Further, on August 30, 2006 – prior to the "holding date" established in Minute-Entry 11 – Trustee moved the Bankruptcy Court to approve the Stipulation, which included an additional request for an extension until October 31, 2006. (*See* Stipulation ¶ 2). As stated in the November 30 Order, the Stipulation provides additional evidence that the Bankruptcy Court was carrying the Extension Motion on its docket, and that Debtor had not rejected the lease. Surely if Debtor had rejected the lease by June 8, 2006, as Appellant asserts, (*see* Appellant's Br. at 18-19), Steamroller and Debtor would not have provided for an additional extension in the Stipulation, nor would they have included a provision that the lease "shall remain in full force and effect" if the terms of the Stipulation were met. As Judge Eisenberg stated, the Stipulation contained "a reaffirmation by the debtor and an acknowledgment that this matter was being carried all throughout." (November 9 Transcript at 33-34.)

By the time of the Conversion Date, the Bankruptcy Court had not ruled on the Stipulation or the motion for extension contained therein. Because that motion was still pending at the Conversion Date, the lease remained in effect and § 348©) controlled. According to this statute, Trustee had an additional 60 days at the Conversion Date to move to assume or reject the lease. Because Trustee moved to assume the lease on November 2, (*see* November 2 Application), the Court finds that the Bankruptcy Court's holding that the November 2 Application was timely was not erroneous.

The Court finds Appellant's arguments to the contrary unpersuasive, for the following reasons.

8

Appellant argues that, because the December 5 Order "resolved" the Extension Motion by granting an extension until January 26, 2006, (Appellant's Br. at 15), the Debtor rejected the lease by failing to request an extension prior to each additional extension the Bankruptcy Court granted. (*Id.* at 15-18.) Appellant places particular emphasis on Debtor's failure to include such a request in the Motion for Reconsideration. (*Id.*) The Court rejects this argument because the December 5 Order did not "resolve" the Extension Motion. The Court finds it improbable that the Bankruptcy Court would have repeatedly rescheduled the Extension Hearing if the Motion for Extension were "resolved." As Judge Eisenberg reaffirmed at the November 9 Hearing, the Bankruptcy Court carried the Extension Motion on its docket for months after granting the initial extension. In addition, while the Court notes that the docket entry pertaining to the December 5 Order states that it "Grant[ed] Motion to Extend Time Within Which the Debtor-in-Possession must Elect to Assume or Reject . . . ," (*see* Docket Entry 45, dated December 5, 2005), both the December 5 Order and the December 7 Order contain a provision that "nothing contained in this Order shall, in any respect, be deemed to prejudice the right or ability of the Debtor to assume or reject the lease for the Premises or the rights or the lessor with respect to any such motion . . ." (December 5 Order at 2; December 7 Order at 2.) Under § 365, "the court is . . . empowered to grant 'such additional time' as it sees fit. . . . [T]he time limits of § 365(d)(4) are intended to limit the actions of the debtor or trustee, but not those of the court." *Tigr Restaurant,* 79 B.R. at 957. Section 365 empowered the Bankruptcy Court to carry the Extension Motion on its docket and grant additional extensions prior to the Bankruptcy Court's final decision, which is exactly what Judge Eisenberg did.

Appellant also complains that "no party was given an opportunity to object to these further extensions." (Appellant's Br. at 18.) However, as outlined above, the Bankruptcy Court's Minute-Entries transparently and publicly docketed each extension, thereby giving all parties notice of the extension. Any party could have, upon reviewing such entries, requested further opportunity to be heard on the issue. Moreover, the Bankruptcy Court afforded Vermont Partners the opportunity to argue before Judge Eisenberg that Trustee's November 2 Application was untimely at the November 9 Hearing and to submit papers to that effect prior to the Bankruptcy Court's issuing the November 30 Order. (*See* Docket Entry 227.)

Appellant's assertion that the Bankruptcy Court "never considered any of the required factors to further extend the Debtor's time to assume or reject the lease,"(*id.* at 18), and that the Bankruptcy Court thus frustrated the "policy goals" of § 365, (*id.* at 30-36), is similarly baseless. Whether to grant an extension of time to assume or reject a lease is "within the discretion of the bankruptcy court." *In re Burger Boys, Inc.*, 94 F.3d 755, 761 (2d Cir. 1996) (citation and quotation marks omitted). In exercising this discretion, bankruptcy courts must consider several factors, including:

(1) whether the debtor was paying for use of the property;
(2) whether the debtor's continued occupation . . .could damage the lessor[] beyond the compensation available under the Bankruptcy Code;
(3) whether the lease is the Debtor's primary asset; and
(4) whether the Debtor has had sufficient

9

time to formulate a plan of reorganization.

*Id.* (citation and quotation marks omitted). Because bankruptcy courts must consider several factors, rulings on motions to extend require "careful factual development and the time necessary to tailor the extension to fit the facts of a particular case." *See Wedtech*, 72 B.R. at 470. Ironically, then, the very adjournments and extensions to which Appellant objects provide the clearest evidence that the Bankruptcy Court intended to provide a "reasoned finding of cause" on the Extension Motion. *Id.* The Bankruptcy Court intended to conduct the Extension Hearing, and repeated adjournments of this hearing necessitated extensions, including those stretching beyond the date Debtor requested in the Extension Motion. As the one court stated, "no possible statutory purpose is served by terminating [an] estate's interest in a lease merely because the court could not hear or decide the issue within the 60-day period." (*Id.* at 469.)

Even if the Bankruptcy Court had heard argument from Vermont Partners regarding the Extension Motion, Appellant suggests that its sole objection to such an extension would be that Debtor already rejected the lease by failing to remit rent. (Appellant's Br. at 19-23.) The Court is unpersuaded by this objection because the Bankruptcy Court did not condition the extensions on Debtor's making rent payments. The Second Circuit has held that bankruptcy courts may not condition such extensions solely on debtors becoming current on post-petition rent, *Burger Boys*, 94 F.3d at 761, and the Bankruptcy Court complied with this holding. Although both the December 5 Order and the December 7 Order contained provisions mandating rent set-asides, these provisions were separate from the provisions granting the extension. Further, though the Affirmation and the Stipulation contained a provision conditioning an extension on these payments, the Bankruptcy Court did not approve the Stipulation or the Motion for Reconsideration, and none of the Bankruptcy Court's extensions suggest a connection to rent payments. Appellant's repeated complaints that Debtor unfairly withheld rent do not change the Bankruptcy Court's decision not to condition extensions on rent payment.

Finally, the Court disagrees with Appellant's assertion that the Bankruptcy Court had to issue so-called "bridge orders" each time it granted an extension because Minute Entries were insufficient to show the Bankruptcy Court's "intention." (Appellant's Br. at 23-29.) To support this assertion, Appellant cites a single case from the District of Delaware, *In re Rickel Home Ctrs.*, 1997 U.S. Dist LEXIS, at * 15 n.2 (D. Del. Aug. 13, 1997). Not only is this case non-binding on the Court, the holding Appellant emphasizes is relegated to a footnote therein. The Court is unable to find any cases in the Second Circuit mandating "bridge orders" or even holding narrowly, as does *In re Rickel*, that such orders are a "better practice." *Id.* Indeed, dockets by courts in this Circuit commonly contain Minute-Entries that serve as orders of the court. Thus, the Court declines to follow *In re Rickel* and rejects this argument. The docket entries by the Bankruptcy Court were clearly sufficient to grant the extensions under these circumstances.

The other cases Appellant cites to argue that the Minute-Entries were insufficient evidence of the Bankruptcy Court's rulings are similarly unpersuasive. Two of these cases address whether certain Bankruptcy Court pronouncements were final enough to

10

be appealed – not whether they are valid themselves. *See In re Merco Joint Venture LLC*, No. 02-80588-288, 2002 Bankr. LEXIS 780, at *6 n.1 (Bankr. E.D.N.Y. 2002) (holding that oral rulings are not final enough to give rise to appeal); *In re Defender Drug Stores, Inc.*, 127 B.R. 225, 231-32 (9th Cir. 1991) (holding that Minute-Entries may not be final enough to give rise to appeal). In the other cases, *In re Farzad Esmizadeh*, 272 B.R. 377, 385-86 (Bankr. E.D.N.Y. 2002) and *In re Burns Fabricating Co.*, 61 B.R. 955 (Bankr. E.D. Mich. 1986), unlike here, the Debtors did not make timely motions for extension within the requisite 60-day period.

For the reasons stated above, the Court concludes that the Bankruptcy Court correctly determined that the motion to assume was timely and affirms the November 30, 2006 Order of the Bankruptcy Court.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: September 28, 2006
Central Islip, New York

\* \* \*

The attorneys for the Appellant are Avram J. Rosen, Esq. and Fred S. Kantrow, Esq., of The Law Offices of Avram J. Rosen, 38 New Street, Huntington, New York, 11743. The attorney for the Appellee-Trustee is Andrew M. Thaler, Esq. of Thaler & Gertler, LLP, 900 Merchants Concourse, Suite 414, Westbury, New York, 11590.